# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

DERRICK WESLEY, JR.,       )
                                    )
           Plaintiff,         )
                                    )
       vs.                 )        **3:19-cv-00032-PPS-MGG**
                                    )
SOUTH BEND COMMUNITY   )
SCHOOL CORPORATION and   )
MARK JOHNSON, in his official   )
and individual capacity,        )
                                    )
          Defendant.      )

## OPINION AND ORDER

It is axiomatic that most high school basketball players want more playing time, and most parents believe their child deserves more. But disputes over playing time don't usually make their way to federal court. Not so here. Derrick Wesley, Jr. is an African-American who was on the varsity basketball team at Riley High School. Defendant South Bend Community School Corporation ("SBCSC") employed his former coach, Mark Johnson, who is Caucasian. Wesley's mother, aunt, and father are self-proclaimed activists against racial injustices at SBCSC. According to Wesley, Johnson retaliated against him because of the expressive conduct of his family members. This occurred after Wesley's mom beat out Johnson's friend for a seat on the school board, and it involved Coach Johnson treating him differently than other players, unfairly criticizing him, ostracizing him, giving him less playing time in games, and not recognizing him at the 2017 Spring Banquet.

The second amended complaint contains three federal claims all brought under section 1983: Count I is an individual claim against Mark Johnson for retaliation in violation of the First Amendment; Count II is a claim against SBCSC for municipal liability for a custom or practice leading to a violation of the First Amendment; and Count III is a claim against SBCSC for failure to train. Both SBCSC and Johnson have filed motions to dismiss all claims against them on the grounds that the second amended complaint fails to state a claim upon which relief can be granted. [DE 39, 42.] For the reasons detailed below, both motions are GRANTED.

## Factual Background

In a quirk of fate, the facts surrounding this controversy are on my desk for the second time. A couple of years ago, Mark Johnson, the defendant in this case, sued SBCSC in Cause No. 3:17-cv-825 (N.D. Ind. filed Nov. 2, 2017), and that case remains pending before me on claims for race discrimination and retaliation. Most of the same cast of characters in that case are involved in this one.

I'll first sketch out the facts as they are alleged in the second amended complaint, which I accept as true for present purposes. Johnson was the boys varsity basketball coach at South Bend Riley High School. [Sec. Am. Compl., DE 33, ¶ 2.] Wesley was a high school senior at that school in the fall of 2016. [*Id.* ¶¶ 5, 6.] That same fall, Wesley's mother, Leslie Wesley, announced she would be running for the school board as a direct opponent of Johnson's friend, William Sniadecki. [*Id.* ¶ 7.] Coach Johnson was unimpressed by her candidacy; he even predicted to Leslie Wesley's face that she

would not beat his friend, Sniadecki. [*Id.* ¶ 8.] But alas, she did win and was seated as a member of the SBCSC school board. [*Id.* ¶ 28.]

According to the complaint, it is pretty clear that Johnson and the Wesley family did not see eye to eye, and matters escalated pretty quickly. For example, Wesley's father, Derrick Wesley, Sr., publicly criticized Coach Johnson. [*Id.* ¶ 9.] It seems that Mr. Wesley disagreed with the defense that Johnson was employing. It is unclear from the complaint whether Johnson was an adherent to a sticky Bobby Knight style man-to-man defense or he preferred a matchup zone. In either event, Mr. Wesley wasn't too impressed with Johnson's coaching and he went public with it.

It wasn't just the style of defense that was being criticized. Race also was a factor. Indeed, Derrick Wesley's aunt (Leslie Wesley's sister, Charan Richards, who also happened to work at SBCSC), criticized how Johnson coached African-American athletes. [*Id.* ¶ 10.] And mom, Leslie Wesley, was vocal on the issue of discipline and alleged disparate treatment African-American students received at SBCSC. [*Id.* ¶¶ 13, 15-17.]

Even before tryouts for the team, Johnson told other school personnel that he was planning to cut Wesley from the basketball team his senior year. [*Id.* ¶ 21.] After talking with the Principal, however, Johnson changed course and decided to let Wesley on the team. [*Id.* ¶¶22-25.] But by January 14, 2017, Wesley's mom became increasingly concerned about the treatment of her son, and she e-mailed the Principal and other administrative staff. [*Id.* ¶ 33.] According to the Wesleys, no response or investigation

was undertaken. [*Id.* ¶ 34.]

Wesley claims that Johnson treated him in ways that, if you believe the allegations in the complaint, are pretty shameful things to do to a high school kid in retaliation for actions of the kid's parents. For example, Johnson accused Wesley of being late to practice when he was not, accused him of messing up on drills when he did not, and punished him for conduct that he let slide in other players. [*Id.* at ¶ 29.] Additionally, Wesley was given almost no playing time during the season. [*Id.* ¶ 31.] Even on senior night, although Wesley was allowed to play early in the game, Johnson benched him after only two minutes. [*Id.*] The topper is that Johnson did not even allow Wesley to be introduced as a senior at the final game, nor did he recognize Wesley at the 2017 Spring Banquet contrary to long-standing tradition. [*Id.* ¶¶ 31, 35.]

Wesley further alleges that Johnson continued his acts of retaliation even after the season was over by releasing e-mails to the South Bend Tribune and other media outlets which included confidential information about Plaintiff. [*Id.* ¶ 37.]

This case was originally removed from state court, and the complaint is on its third iteration. The theories outlined in the original complaint filed in state court have largely been abandoned. [DE 5.] Wesley filed a first amended complaint on April 11, 2019. [DE 15.] Both Johnson and SBCSC interpreted the first amended complaint as an attempt to assert Fourteenth Amendment claims, and both defendants filed motions to dismiss arguing Wesley did not state a claim because he did not allege defendants interfered directly and substantially with Wesley's exercise of a fundamental right in a

manner that was shocking to the conscience. [DE 15, 18, 21.] Instead of responding to this argument, Wesley filed a motion for leave to file a second amended complaint, which was granted. [DE 27, 32.] An amended complaint becomes controlling once it is filed because the prior pleading is withdrawn by operation of law. *Johnson v. Dossey*, 515 F.3d 778, 780 (7th Cir. 2008); *see also Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1057 (7th Cir. 1998).

The second amended complaint makes very clear that Wesley is trying to abandon any reliance on the Fourteenth Amendment. Instead, all of his claims are now brought under the First Amendment. In Count I, Wesley contends that Johnson intentionally retaliated against him for the political speech of his family members in violation of section 1983. [Sec. Am. Compl. at 14-15.] Count II raises a *Monell* claim for SBCSC's alleged unconstitutional custom and practice that led to a First Amendment violation. [*Id.* at 16-17.] And Count III is also a *Monell* claim based on SBCSC's alleged failure to properly train its staff. [*Id.* at 17-18.] Both SBCSC and Johnson have moved to dismiss all claims in the second amended complaint under Federal Rule of Civil Procedure 12(b)(6).

## Discussion

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While I

must accept all factual allegations as true and draw all reasonable inferences in the complainant's favor, I don't need to accept threadbare legal conclusions supported by purely conclusory statements. *See Iqbal*, 556 U.S. at 678. Johnson must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Making the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

I.      **Count I: First Amendment Retaliation Claims Against Mark Johnson**

        Let's begin by making it clear what Count I is *not* about. Wesley is not claiming that he was retaliated for something that he said. Instead, Wesley alleges retaliatory conduct by Johnson (giving him less playing time, ostracizing him, treating him differently than other players, etc.) because of his mother, father, and aunt's exercise of free speech and political speech. [Sec. Am. Compl. ¶¶ 56-58.] In other words, Wesley concedes that he did not engage in any political speech, expressive activities, or conduct himself, but that Johnson was retaliating against Wesley because of the political speech of others. Wesley tries very hard to fit his retaliation claims under the First Amendment, but to no avail.

        Wesley claims "this situation is rare and the case law is convoluted," and then proceeds to cite case law from a variety of other circuits in arguing that "the Court should view this as a routine First Amendment retaliation case." [DE 46 at 1, 10.] I can't do that. First, this isn't a routine First Amendment case because Wesley does not allege

that he himself directly engaged in an activity or speech that was protected by the First Amendment.  *See Santana v. Cook Cnty. Bd. of Review*, 679 F.3d 614, 622 (7th Cir. 2012) ("[t]o state a First Amendment retaliation claim, [plaintiff] must plausibly allege that (1) he engaged in activity protected by the First Amendment . . . .").

Second, the Seventh Circuit has been very clear that it does not recognize a freedom of association claim under the First Amendment that is only based on a familial or intimate association.  Here's the nub of it:

> The Supreme Court has explained that the Constitution protects two distinct forms of free association.  The first, freedom of *expressive association*, arises from the First Amendment and ensures the right to associate for the purpose of engaging in activities protected by the First Amendment.  The second, freedom of *intimate association*, protects the right to enter into and maintain certain intimate human relationships.  The freedom of intimate association receives protection as a fundamental element of personal liberty, and as such is protected by the due process clauses.

*Montgomery v. Stefaniak*, 410 F.3d 933, 937 (7th Cir. 2005) (emphasis added) (citations and internal quotations omitted).  In other words, the Seventh Circuit analyzes familial or intimate association claims — or claims involving no expressive association — under the Fourteenth Amendment, not the First Amendment.  Wesley alleges a right to associate "with family members who exercised *their* right to free political speech."  [Sec. Am. Compl. ¶ 57 (emphasis added).]  Because Wesley makes no allegation that he engaged in any protected speech or political activities himself, or that he associated with family members for the purpose of engaging in a protected expression or activity, his claims clearly fall under the second prong – intimate association under the due

process clause.

District courts in this circuit have applied the law stated in *Montgomery* consistently. In *Allen v. City of Moline*, No. 4:17-cv-04066-JES-JEH, 2017 WL 5617060 (C.D. Ill. Nov. 21, 2017), the plaintiff alleged that his wife's political activities and his support for those activities resulted in retaliation against him, violating his right to familial association. That court reiterated that:

> The Seventh Circuit has yet to recognize a First Amendment familial association claim. *See Norman-Nunnery v. Madison Area Technical College*, 625 F.3d 422 (7th Cir. 2010). While *Norman-Nunnery* acknowledged that the Second Circuit applied the First Amendment to a similar claim in *Adler v. Pataki*, 185 F.3d 35 (2nd Cir. 1999), the Seventh Circuit declined to do so in *Norman-Nunnery* because the Plaintiff's claim failed for lack of evidence. *Norman-Nunnery*, 625 F.3d at 434. The Seventh Circuit previously suggested, however, that familial association claims similar to the one raised here arise under the Fourteenth Amendment, not the First. *Montgomery*, 410 F.3d at 937.

*Id.* at 7. Similarly, in *DeLaCruz v. Pabey*, No. 2:05-CV-192, 2007 WL 3102143, at *8 n.3 (N.D. Ind. Oct. 18, 2007), the court explained, "[b]ecause the freedom of intimate association is seen as a fundamental element of personal liberty," it is protected by the Due Process Clause of the Fourteenth Amendment. Finally, in *Rojas v. Dominick*, No. 08 C 5913, 2011 WL 2292315, at *3 (N.D. Ill. June 8, 2001), the court confirmed that the Seventh Circuit "has yet to recognize a First Amendment familial association claim."

To the extent Wesley tries to fit his claims under the umbrella of the First Amendment, his effort fails. [DE 47 at 10-15; DE 46 at 10-15.] Wesley seems to argue that his family relationships, alone, constitute expressive association, or at least some

type of association protected by the First Amendment. But the Seventh Circuit's decision in *Shondel v. McDermott*, 775 F.2d 859 (7th Cir. 1985), shuts down that argument. In *Shondel*, the plaintiff brought a First Amendment retaliation claim, alleging she was wrongfully terminated from her City of Hammond receptionist position not because of her own political beliefs, but because of the political activities of her stepfather (who was a political opponent of the new mayor). *Id.* at 861-62. The issue on the plaintiffs' motion for a preliminary injunction was whether Mrs. Shondel could maintain a First Amendment claim based only on her stepfather's political activity and her relationship to him. The court in *Shondel* rejected that argument. *Id.* at 865-66. It held that any such claim would derive from the Fourteenth Amendment's due process claim and concluded "[i]f Mrs. Shondel had been fired because she had associated with [her stepfather] in some particular way we might have a different case; but if as appears she was fired simply because she was known to be his stepdaughter, her right to associate with the members of her family could not have been infringed." *Id.* Twenty years after this ruling, the Seventh Circuit relied upon *Shondel* in support of its conclusion in *Montgomery* that the freedom of intimate association is protected by the due process clauses, and does not arise from the First Amendment. *Montgomery*, 410 F.3d at 937.

Wesley argues there are cases in the Seventh Circuit which allow third parties to proceed with First Amendment retaliation claims based upon the speech of others, but these cases do not actually support Wesley's position. First, *Newborn v. Morrison*, 440

F.Supp. 623 (S.D. Ill. 1977), was decided eight years before the Seventh Circuit's decision in *Shondel* and is therefore not persuasive. Second, in *Gonzalez v. Town of Cicero*, No. 06 C 3961, 2008 WL 506143, at *3 (N.D. Ill. Feb. 21, 2008), four plaintiffs sued for First Amendment retaliation based upon one of the plaintiff's speech, and although the court hinted that the First Amendment could provide a possible basis for their claims, it then cited another case, *Toronyi v. Barrington Community Unit School District 220*, No. 03 C 3949, 2005 WL 388568, at *6 (N.D. Ill. Feb. 10, 2005), for the proposition that "standing by" the speech of another could constitute expressive conduct protected by the First Amendment. As that district court later clarified in *Gonzalez v. Dominick*, No. 06 C 3961, 2012 WL 2504901, at *2 (N.D. Ill. June 28, 2012), when it granted the defendants' motion for summary judgment, family members "could conceivably be covered under a retaliation claim if they could show they were retaliated for speech of their own, such as standing by [the plaintiff who actually made the political speech]," but that evidence was not produced. Similarly, there are no allegations in this case that Wesley himself spoke, or stood by the political statements of his relatives; therefore, *Gonzalez* also does not help him. Finally, *Whitehouse v. Piazza*, 397 F.Supp.2d 935 (N.D. Ill. 2005), covers a situation where a plaintiff was threatened so that he was prevented from using his free speech, but there are no allegations in this case that Wesley wanted to engage in free speech but was prevented from doing so.

Before I move on to analyzing Wesley's claim under the intimate association rubric, I note that perhaps his mother, aunt, or father could have a claim, but they have

not been named as plaintiffs in this case. And Wesley does not have third-party

standing to bring derivative First Amendment claims on behalf of his mother, father or

aunt. In considering whether Wesley has standing to advance the constitutional rights

of his family members, I have to weigh, among other things, whether prudential

considerations allow him to advance the claim. *Shanahan v. City of Chicago*, 82 F.3d 776,

780 (7th Cir. 1996). One factor to consider is the ability of the person to advance his or

her own rights. *Id.* at 780-81. It is true that some cases allow third party standing in the

First Amendment context. But those cases appear to allow third party standing when

the First Amendment challenge is to a statute or ordinance where the prospects of

chilling free speech is more grave. *See, e.g., Shimer v. Washington*, 100 F.3d 506, 508-09

(7th Cir. 1996) ("Our concern that a law will stifle protected speech justifies such

allowance of third-party standing."). That is not the case here because no widespread

law, ordinance, or statute is at issue.

What's more, Wesley does not allege that his mother, father or aunt faced any

obstacles to bringing their own First Amendment retaliation claims. *Shanahan*, 82 F.3d

at 780; *see also Cain v. Tigard-Tualatin Sch. Dist. 23J*, 262 F.Supp.2d 1120, 1128-29 (D. Or.

2003) (finding student lacked standing to bring derivative First Amendment retaliation

claim on behalf of his parents, stemming from coach's alleged mistreatment, because the

parents were able to protect their interests by bringing their own claim). In his

response, Wesley claims his family members lacked a financial incentive to bring a

claim because they weren't harmed by and suffered no damages because of Johnson's

alleged retaliatory harassment. [DE 47 at 16-17.] This strikes me as a curious assertion since mental and emotional pain and suffering is a measure of compensatory damages that may be recovered under section 1983 for a First Amendment retaliation claim. *See* Seventh Circuit Civil Pattern Instr. 7.26 (2017). It doesn't take much imagination to see the emotional toll that can be exacted on a parent by seeing one's child being treated so shabbily by a coach in response to the parents' expressive conduct. So perhaps his mother, father and aunt would have a claim. But one has not been brought in their names, and I see no reason to allow Wesley to proceed on a derivative claim on behalf of them when they could well bring the claim on their own.

Taking all of our circuit law into account, and ignoring the labels that Wesley has placed on the claims, it is clear that his claim is really one for intimate association deriving from the Fourteenth Amendment's due process clause, and "[t]he question, then, is whether Plaintiff has demonstrated that Defendants deprived [him] of a liberty interest." *Jain v. Butler Illinois Sch. Dist. 53*, No. 17-cv-0002, 2017 WL 3872474, at *5 (N.D. Ill. Sept. 5, 2017). The Fourteenth Amendment due process clause prohibits state government from depriving "any person of life, liberty, or property without due process of law . . . ." U.S. Const. Amend. XIV, § 1. Under the substantive component of the due process clause, I must first determine whether the liberty interest allegedly violated was "fundamental" or "whether it is so deeply rooted and sacrosanct that no amount of process would justify its deprivation." *Christensen v. County of Boone, Ill.*, 483 F.3d 454, 462 (7th Cir. 2007). If there is a fundamental right at issue, then I must

"determine whether the government has interfered 'directly' and 'substantially' with the plaintiff's exercise of that right." *Id*. As mentioned earlier, the Constitution does protect the freedom of intimate association "as a fundamental element of personal liberty, and as such is protected by the due process clauses." *Montgomery*, 410 F.3d at 937; *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984). In this case, Johnson does not question that Wesley's relationship with his mother, father, and aunt satisfy the type of relationship that can be protected.

Next, I need to consider whether Wesley has sufficiently alleged that Johnson interfered "directly" and "substantially" with Wesley's intimate association with his family. *See Christensen*, 483 F.3d at 462 (citing *Zablocki v. Redhail*, 434 U.S. 374, 386-87 (1978)); *see also Rihm v. Hancock Cnty. Pub. Library*, No. 1:12-cv-01474-RLY-TAB, 2013 WL 6238627, at *5-*6 (S.D. Ind. Dec. 3, 2013). This is where Wesley's claim falls short. To interfere "directly" and "substantially" with Wesley's right to associate intimately, the actions complained of must have "substantially impact[ed Wesley's] ability to associate with" his mother, father, and/or aunt. *Montgomery*, 410 F.3d at 938. This is a high bar. *See Christensen*, 483 F.3d at 463 ("[t]he Constitution prevents fundamental rights from being aimed at; it does not, however, prevent side effects that may occur if the government is aiming at some other objective.").

In this case, Wesley alleges that Johnson was planning to cut him from the varsity basketball team (but ultimately let him on the team); he treated Wesley different than other kids and accused him of being late to practice (when he wasn't) or messing

up on drills (when he didn't); he gave Wesley almost no playing time during the

season; on senior night he took Wesley out of the game after only two minutes and did

not introduce him as a senior; he did not recognize the seniors at the 2017 Spring

Banquet; and he released some e-mails to the media that included confidential

information regarding Wesley. All of these claims (with the possible exception of

releasing information to the media), relate to Johnson's treatment of Wesley as a

basketball player and his experience with the basketball team. I can't see how any of

these claims directly "interfere" with Wesley's relationships with his family members.

Wesley does not allege that Johnson tried to drive a wedge between his family and him,

or attempted to somehow convince Wesley to remove himself from their custody. And

even the allegation relating to the release of e-mails does not allege that the e-mails

were somehow used to affect Wesley's relationship with his mother, father, or aunt. As

such, I cannot say that Wesley has alleged a direct and substantial interference with his

relationship with his mother, father, or aunt. Wesley has therefore failed to state a

claim in Count I for which relief can be granted.

One last thing on this claim. Even if the second amended complaint were found

to allege a direct and substantial interference with Wesley's right of intimate association

with his mother, father, or aunt, this claim should still be dismissed because it fails to

rise to the level of conduct that "shocks the conscience." *Christensen*, 483 F.3d at 464; *see*

*also Armstrong v. Squadrito*, 152 F.3d 564, 577-82 (7th Cir. 1998) (discussing at length the

analysis involved in determining if something shocks the conscience). "For behavior to

'shock the conscience,' it must be so brutal and offensive that it does not comport with traditional ideas of fair play and decency," and behavior by an official may be "deplorable, distasteful, and shameful" without rising to the level of conscience shocking. *Rihm*, 2013 WL 6238627, at *6-*7. Here, while I don't condone Johnson's treatment of Wesley, those actions do not come close to rising to the level of shocking the conscience.

## II. Count II: Custom or Practice Leading to a Violation of the First Amendment, Municipal Liability Under Section 1983

Wesley alleges that SBCSC is liable under a *Monell* theory due to its custom or practice leading to a violation of the First Amendment. [Sec. Am. Compl. ¶¶ 62-67.] This *Monell* claim also fails. Section 1983 liability under *Monell* is available where: (1) an official policy that caused a constitutional violation is enforced; (2) a widespread practice, that, although not an express or written policy, is permanent enough that it constitutes a "custom" with the force of law; or (3) an allegation that the constitutional injury was caused by someone with final policy-making authority. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009). This claim never gets off the ground because, as discussed earlier, Wesley has not stated a viable constitutional injury.

But let me address Wesley's arguments as well. Wesley attempts to allege the third prong of *Monell*'s municipal liability by asserting that the school essentially deferred to Johnson on all questions regarding the basketball team. [DE 47 at 20.] He also alleges that the school did not have an official policy that prohibited athletic coaches from retaliating against a student athlete based on the student's family

15

connections. [Sec. Am. Comp. ¶ 49.] Thus, Wesley claims because Johnson's authority as coach was not constrained by any such policy, he "became the official policy maker for the School Corporation with respect to his treatment of student athletes vis-a-vis their First Amendment rights." [*Id.* ¶ 50.]

Whether a municipal officer is acting as a final policymaker is a question of state and local law. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). In Indiana, the final policymaker for a public school corporation is its board of school trustees. *See Herndon v. South Bend Sch. Corp.*, No. 3:15 CV 587, 2016 WL 3654501, at *1 (N.D. Ind. July 8, 2016) (finding in regard to a *Monell* claim against SBCSC, that "under Indiana law, it is the school board, and not the principal that has final policymaking authority."); *Harless by Harless v. Darr*, 937 F.Supp. 1339, 1349 (S.D. Ind. 1996) ("the school board and not the Principal or the Superintendent has final policy making authority under Indiana law.").

Clearly final policymaking authority in the school lies with the school board and not the basketball coach. Even if Johnson had discretionary authority to make decisions involving the basketball program like how much playing time each player should get, Johnson was not the final decision maker regarding policies for purposes of Section 1983 municipal liability. *See Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 469 (7th Cir. 2001) (*Monell* liability is limited "to situations in which the official who commits the alleged violation of the plaintiff's rights has authority that is final in the special sense that there is no higher authority."). Just as the court in *Oliver by Hines v.*

16

*McClung*, 919 F.Supp. 1206, 1216 (N.D. Ind. 1995), determined that granting a principal broad discretion regarding educational and scholastic matters within his or her school did not equate to final policymaking authority, the same is true in this case - just because the school gave Johnson discretionary authority over the boys varsity basketball team does not mean that he was responsible for establishing *final* government policy.

To the extent Wesley agues that SBCSC did not have an official policy that prohibited athletic coaches from retaliating against a student athlete, the absence of an official policy about the operation of a particular program does not support the inference that the school board had delegated its final policymaking authority to Johnson on all matters relating to the basketball program. *See Cornfield by Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1325 (7th Cir. 1993) ("the absence of a written policy is not enough to support an inference that final policymaking authority has been delegated to a subordinate."). For all of these reasons, Wesley has failed to state a *Monell* claim for a custom or practice.

## III. Count III: Failure to Train Leading to a Violation of the First Amendment, Municipal Liability Under Section 1983

In Count III, Wesley alleges that he suffered a constitutional deprivation due to SBCSC's deliberate indifference to the training of its employees. [Sec. Am. Compl. ¶¶ 68-73.] He alleges the school "failed to institute policies or procedures to effectively educate, supervise, or train its employees on the nature of First Amendment political association and free speech rights." [*Id.* ¶ 69.] Again, this claim fails largely because

Wesley has not stated a constitutional violation (under the First Amendment or otherwise). But it also fails because the alleged failure to train does not amount to deliberate indifference.

The Supreme Court has held that a municipality's failure to train its employees can be considered a policy or custom actionable under section 1983 only when this failure to train amounts to "deliberate indifference to the constitutional rights of its inhabitants." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989). To satisfy this, Wesley must "show that the defendants were on notice of a pattern of constitutional violations resulting from the inadequate training . . ." and the inadequate training must cause a constitutional deprivation. *Hirsch v. Burke*, 40 F.3d 900, 904 (7th Cir. 1994); *Harris*, 489 U.S. at 387. Wesley has not alleged that the school board was on notice of a pattern of constitutional violations resulting from sub par training. Wesley alleges the Principal knew that Johnson was intending to cut him from the team, but that was presumably addressed and resolved by the Principal since Wesley stayed on the varsity basketball team. And even taking the allegation as true that Wesley's mother sent an e-mail in January 2017 to the Principal and administrative staff about the treatment of her son, this one report can't mean the school was on notice of a pattern of constitutional violations. *Hirsch*, 40 F.3d at 905 (finding an isolated incident, at most, constitutes simple negligence which is not enough to attach liability under section 1983). Accordingly, the claim against SBCSC for failure to train should also be dismissed.

**Conclusion**

For the reasons stated above, the Motions to Dismiss filed by Johnson and SBCSC [DE 39, 42] are both GRANTED. Wesley has had three opportunities to state a claim. I see no reason to give him a fourth bite at the apple. All claims are therefore DISMISSED WITH PREJUDICE against Defendants, Mark Johnson and South Bend Community School Corporation. The previous motions to dismiss based on the first amended complaint [DE 18, 21] are DENIED AS MOOT. The Clerk is ORDERED to CLOSE this case.

SO ORDERED.

ENTERED: October 29, 2019.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT